USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/21/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE: APPLICATION OF PEDRO PIDWELL FOR AN ORDER SEEKING DISCOVERY FROM CENTERBRIDGE PARTNERS L.P., AND APOLLO GLOBAL MANAGEMENT, INC. F/K/A APOLLO GLOBAL MANAGEMENT, LLC PURSUANT TO 28 U.S.C. §1782, IN AID OF A FOREIGN PROCEEDING

OPINION

1:21-MC-0166 (ALC)(KHP)

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Pedro Pidwell ("Petitioner"), Liquidator and Administrator of Espirito Santo Financial Portugal, SGPS, SA ("ESFP"), submitted an application requesting that the Court, pursuant to 28 U.S.C. § 1782, authorize Petitioner to issue subpoenas demanding that Centerbridge Partners L.P. ("Centerbridge") and Apollo Global Management, Inc. ("Apollo"), (collectively, "Respondents"), produce documents related to a litigation pending in Lisbon, Portugal. Apollo opposes the application. Centerbridge relies primarily on the arguments in Apollo's opposition brief. For the reasons set forth below, Petitioner's application is GRANTED.

## BACKGROUND

Petitioner is a duly appointed liquidator and administrator of ESFP. ESFP is an insolvent Portuguese entity that collapsed in 2014. Its former Chairman, Ricardo Espirito Santo Salgado, was arrested and accused of fraud and money laundering, among other crimes, and is the subject of Portuguese criminal proceedings.

Petitioner asserts that Salgado and his conspirators caused ESFP's primary asset, a 45% ownership in a Portuguese insurance company called Companhia de Seguros Tranquilidade, S.A. ("Tranquilidade") to be stripped from ESFP without consideration. Specifically, Petitioner

1

asserts that Salgado caused Tranquilidade's shares to be pledged to Banco Espirito Santo ("BES") as collateral for a $700 million line of credit ("LOC") provided by BES to Espirito Santo Financial Group, S.A. ("ESFG"). At the time of the pledge, a holding company called Partran, S.G.P.S., S.A. ("Partran") owned all of Tranquilidade's shares, and ESFP held a 45% ownership interest in Partran, while ESFG held the remaining 55% interest. Salgado is alleged to have controlled both ESFG and BES. Sometime thereafter, BES transferred its interest in Tranquilidade (via the LOC to ESFG) to Novo Banco S.A. ("Novo Banco"). ESFG defaulted on the LOC, causing Novo Banco to execute on the pledge of Tranquilidade shares and become the new owner of Tranquilidade. Novo Banco then sold Tranquilidade to Calm Eagle Holdings, S.a.r.l. ("Calm Eagle"), a wholly owned subsidiary of Apollo, for an undisclosed sum which is assumed to be approximately 25 million Euros. This sale occurred in 2015. Calm Eagle then sold Tranquilidade to a third party buyer for approximately 510 million Euros.

Petitioner asserts that the sale of Tranquilidade by Novo Banco to Apollo was far below its then fair market value and that ESFP received nothing from the sale.

Notably, when the sale of Tranquilidade by Novo Banco to Calm Eagle was pending, two of ESFP's bondholders, funds controlled by Centerbridge, sought and obtained a temporary injunction to stay the sale. The Centerbridge funds similarly asserted that the sale was suspicious and below market value. ESFP, also a bondholder, relied on the injunction to assist it in preserving its investment. However, the Centerbridge funds later withdrew their application for an injunction without notifying the other bondholders, including ESFP, allowing the sale to go through the day after the withdrawal. ESFP later learned that the Centerbridge funds received equity interest in Tranquilidade, whereas other bondholders like ESFP did not.

Consequently, ESFP, together with ESFG and Partran, commenced a civil action in the District Court of Lisbon-Central Instance (the "Portuguese Action"), seeking to annul the sale of Tranquilidade to Calm Eagle and compel the return of Tranquilidade shares to Partran or, alternatively, to recover damages allegedly caused by Novo Banco and Calm Eagle in connection with the 2015 sale of Tranquilidade.

According to Petitioner, a key issue in the Portuguese Litigation is the legality of and motivation for the sale of Tranquilidade to Calm Eagle and whether Calm Eagle acted with bad faith when it purchased Tranquilidade. Petitioner asserts that Calm Eagle knew or should have known that the initial pledge of Tranquilidade shares to BES (that were then transferred to Novo Banco) was highly suspect in light of the criminal activity of Salgado, chair of BES and ESFG, and that the below-market-value sale of Tranquilidade to Calm Eagle would harm ESPF's bondholders. It also suspects some sort of illicit arrangement between the Centerbridge funds and Calm Eagle or its parent or affiliates that resulted in Centerbridge withdrawing its legal challenge to the sale of Tranquilidade in exchange for it receiving an equity interest in Tranquilidade. The plaintiffs in the Portuguese Litigation believe the backroom dealings with Centerbridge also bear on the bona fides of the Tranquilidade sale.

Although Apollo is the parent of Calm Eagle, it is not a party to the Portuguese Litigation. Centerbridge also is not a party to the Portuguese Litigation.

The Portuguese Litigation was commenced in 2015, shortly after the sale of Tranquilidade to Calm Eagle. However, the case has not progressed due to the poor health of the judge previously assigned to the case and its 2019 re-assignment to a new judge. There has

been some procedural motion practice, including as to certain amendments to the pleadings, but the action is still in its early stages.

The Portuguese judge has allowed certain discovery requested by Petitioner in the Portuguese Litigation including a letter dated May 23, 2014 signed by Apollo regarding the Calm Eagle transaction, the agreement for Tranquilidade to acquire the Espirito Santo Activos Financieros, S.G. P.S., S.A. ("ESAF") shares, and the electronic correspondence exchanged between Calm Eagle and Novo Banco related to the negotiation of the price structure of the transaction.[1] The action is stayed at the moment and certain parties are nearing a settlement.

Prior to a stay in discovery, Petitioner requested certain documents in the Portuguese Litigation including:

- From Novo Banco and Calm Eagle, "all correspondence, including electronic correspondence, relative to the sale process to Tranquilidade of the shares representing 10% of the capital stock of ESAF and the later resale process of these same shares;"
- From Novo Banco and Calm Eagle, "all recordings and any transcriptions of the phone calls relative to the sale process to Tranquilidade of the shares representing 10% of the capital stock of ESAF . . . and the later resale process of these same shares;"
- From Novo Blanco and Calm Eagle, "all documents relative to the company deliberations in regard to the sale process to Tranquilidade of the shares representing 10% of the capital stock of ESAF . . . and the later resale process of these same shares;" and
- From Novo Banco, "all correspondence, including electronic correspondence, exchanged with Banco de Portugal, relative to the sale process to Tranquilidade

---

[1] In addition, the Portuguese judge set out various "topics of evidence" in the case that include, among other things, evidence pertaining to the intention /awareness of harm to the plaintiffs and their creditors, the awareness of opposition of the plaintiffs to the transaction, pressure from certain entities relative to the exposure of ESFG, among other entities, on the LOC, the devaluation of Tranquilidade shares and reasons therefore, the conduct of Novo Banco during the sale and assessment of the value of the Tranquilidade shares, the sale by BES to Partran of the ESAF shares and the repurchase agreement; and the difference between the value attributed to the ESAF shares in the purchase agreement and their respective real value.  (ECF No. 17-4 at p. 4.)

4

of the shares representing 10% of the capital stock of ESAF . . . and the later resale process of these same shares."

On September 28, 2020, the court denied the above requests because Petitioner did not sufficiently identify the specific documents sought "considering that [they were] documents in which there were intervening parties that are not parties to [the Portuguese Litigation]," and that Plaintiffs did not provide time limits to their requests or identify the subjects that sent and received the electronic correspondence, the parties that intervened, or the deliberations in question (dates, companies, etc.). Additionally, the court denied Petitioner's request to Calm Eagle for "the most recent account statement in which the ownership of the Tranquilidade shares [are] registered," because "it was not useful to reveal the facts alleged." (ECF No. 17-4.) Petitioner has appealed aspects of the discovery ruling, and the appeal is pending.

## THE PROPOSED SUBPOENAS

In this action, the proposed subpoena to Apollo requests documents from the period January 1, 2014 to January 20, 2015 concerning:

- the valuation, market value or fair value of Tranquilidade or Tranquilidade's assets;
- the impact that the sale of Tranquilidade by Novo Banco to Calm Eagle may have had on ESFP, Partran, or on bondholders, equity holders, or creditors of ESFP and Partran;
- the price offered to or paid by Calm Eagle to Novo Banco for Tranquilidade.

(ECF No. 4.) It also requests that a person with knowledge appear for a deposition to testify about the above-listed documents, as well as about discussions concerning the topics covered by the documents. (*Id*.)

The proposed subpoena to Centerbridge seeks documents for the period January 1, 2014 to January 20, 2015 related to Centerbridge obtaining a direct or indirect equity or

5

economic interest in Tranquilidade or any holding company of Tranquilidade. (ECF No. 5.) It also requests that a person with knowledge appear for a deposition to testify about the documents and the circumstances and manner in which Centerbridge obtained a direct or indirect interest in Tranquilidade or any holding company of Tranquilidade. (*Id*.)

## APPLICABLE LAW

Section 1782 empowers a United States district court to order any person residing within its jurisdiction to provide discovery for use in a foreign proceeding pursuant to the application of an interested party. 28 U.S.C. § 1782(a). Applicants for discovery under Section 1782 must meet three statutory requirements: "(1) the person from whom discovery is sought must reside or be found in the district in which the application was made, (2) the discovery must be 'for use in a foreign proceeding before a foreign tribunal', and (3) the applicant must be either a foreign tribunal or an 'interested person.'" *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 128 (2d Cir. 2017) (citing *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, LLP*, 798 F.3d 113, 117 (2d Cir. 2015)).

In the instant case, it is undisputed that all three statutory requirements are met. Both Respondents reside in the Southern District of New York. The documents sought are for Petitioner's use in the pending litigation before a Portuguese court. *In re Rodriguez Guillen*, No. 20-mc-102 (ALC), 2020 WL 3497002, at *2 (S.D.N.Y. June 29, 2020) (finding that both ongoing and contemplated criminal proceedings in the Dominican Republic and Barbados satisfied the "for use" statutory requirement). Finally, Petitioner is an interested person because he is the Court appointed liquidator/trustee of ESFP – which is a party to the Portuguese Litigation, thus

making Petitioner an "interested person." *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434, 438 (S.D.N.Y. 2011) ("litigants are included among . . . the interested persons who may invoke § 1782") (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004)).

Provided the statutory requirements for discovery are met, the Court must then determine, in its discretion, whether the discovery should be permitted in light of the four so-called *Intel* factors. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). These factors are as follows:

- Whether the person from whom discovery is sought is a participant in the foreign proceeding;
- The nature and character of the foreign tribunal and proceedings before it, as well as the tribunal's receptivity to U.S. federal-court judicial assistance;
- Whether the discovery request is an attempt to circumvent foreign proof-gathering restrictions or policies of a foreign country or the United States; and
- Whether the discovery is unduly intrusive or burdensome.

*Intel*, 542 U.S. at 264-65. When evaluating these factors, the Court must be mindful of the goals of Section 1782: to provide efficient means of assistance to participants in international litigation and to encourage foreign countries by example to provide similar means of assistance to U.S. courts. *Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 97 (2d Cir. 2020).

## DISCUSSION

Apollo and Centerbridge oppose the issuance of the subpoenas based primarily on the first and third *Intel* factors.[2] They argue that Petitioner's request is untimely, as it was served

---

[2] Centerbridge joined in Apollo's arguments.

five years after the commencement of the Portuguese Litigation, and before a pending motion to dismiss has been decided. They also argue that Petitioner is seeking information that can be obtained from the Court in Portugal and is attempting to circumvent proof-gathering restrictions in Portugal. Lastly, they argue that as of February of 2021, discovery in the case has been stayed by agreement of all the parties for the facilitation of settlement discussions, and that at a minimum, should settlement discussions fail, request that the undersigned defer this subpoena request. These arguments are unavailing and this Court declines to defer Petitioner's request.

To start, the Portuguese Litigation is still pending (albeit stayed). In fact, Calm Eagle's recently filed and public Annual Account Statement reports that the Portuguese Litigation is in its early stages. At oral argument for the instant application, Apollo did not dispute Calm Eagle's own statements about the state of the litigation. Further, the cases cited by Apollo suggesting that undue delay is a basis for rejecting a Section 1782 application are distinguishable. *See In re Hulley Enterprises, Ltd.*, 358 F. Supp. 3d (S.D.N.Y. 2018) (involving 16-year delay); *In re Application of Nascimento*, 14 Civ. 0020, 2014 WL 4457141 (S.D.N.Y. May 13, 2014) (involving 13-year delay); *Aventis Pharma v. Wyeth*, 19-mc-70, 2009 WL 3754191 (S.D.N.Y. Nov. 9, 2009) (discovery requested on eve of appeal).[3]

As to the first *Intel* factor, Apollo suggests that because it is the parent entity of Calm Eagle, it is a de facto party to the Portuguese Litigation. As a result, Calm Eagle, which is a

---

[3] Apollo also suggested that the Portuguese Litigation may be settling in part in the near future. However, as of the date of this decision, no settlement has been finalized. Nor is it clear that Petitioner would be without rights to challenge any settlement. Apollo also suggests that Petitioner's claim in the Portuguese Litigation is without merit and that the Portuguese court will likely dismiss it. This Court is not in a position to prognosticate on the outcome of a foreign proceeding, and does not attempt to analyze Portuguese Law in connection with this application.

special purpose entity established for accomplishing the sale of Tranquilidade, passes through all discovery requests to Apollo.  Thus, while Apollo is not technically a party to the litigation, it nevertheless is doing the work in responding for Calm Eagle.  As to the third *Intel* factor, Apollo points to certain similar discovery requests served on Calm Eagle that were limited or disallowed by the Portuguese Court.  Although Apollo acknowledges that Petitioner has appealed the judge's ruling, it suggests that seeking similar information from it is an end run around the judge's ruling.  It explains that the Portuguese judicial system has a stricter approach to pre-trial evidentiary requests that should preclude a person from obtaining broader discovery in the U.S. Courts via Section 1782.

Parent companies of non-U.S. participants in foreign proceedings are separate legal entities for purposes of Section 1782 applications.  *In re Top Matrix Holdings Ltd*., 18-mc-465, 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020).  Additionally, the fact that a U.S. affiliate may have some of the same documents as its foreign affiliate in the foreign litigation does not weigh against granting the requested discovery.  *Id*. at *5 (permitting Section 1782 discovery from Credit Suisse USA even though Credit Suisse AG, which was a party to a proceeding in a foreign court, also had the same information; reasoning that so long as the party from whom discovery sought is not a participant in the foreign proceeding, the first *Intel* factor weighs in favor of allowing the discovery).  While it may be true that Apollo is assisting Calm Eagle in the Portuguese Litigation, it is not in fact a party to the litigation.  Additionally, Apollo may have relevant documents that are within its, and not its subsidiary's, possession.  Further, it is unclear whether Apollo can be compelled by the Portuguese court to independently produce

documents. Regardless, it is not a party to that litigation, the critical issue when evaluating the first *Intel* factor. All these facts weigh in favor of permitting the subpoenas to issue.

The law is also clear that a party seeking discovery pursuant to Section 1782 need not first seek discovery from the foreign tribunal. *See Gorsoan Ltd. v. Bullock*, 652 F. App's 7, 9 (2d Cir. 2016); *Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992). Thus, to the extent Apollo and Centerbridge suggest that Petitioner must first try to obtain discovery from then directly from the Portuguese court, their suggestion is rejected.

As for the third *Intel* factor -- whether Petitioner is trying to circumvent a discovery ruling issued with respect to documents requested from Calm Eagle or other parties to the Portuguese Litigation, several legal principles are relevant. First, U.S. courts recognize that discovery obtainable under Section 1782 and the Federal Rules of Civil Procedure may be broader than that obtainable in a foreign court. *Bandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012). Nonetheless, the Second Circuit has directed that a district court "should not consider the discoverability of the evidence in the foreign proceeding" when ruling on a Section 1782 application. *Id*. For this reason, courts often grant discovery requests under Section 1782 even though the party seeking it may not have been able to obtain it in the foreign country. *See In re Tiberius Group AG*, 19-sc-467, 2020 WL 1140784, at *4 (S.D.N.Y. Mar. 6, 2020) (affirming grant of Section 1782 application over objection that discovery sought was beyond that authorized under Cyprus law); *In re O'Keefe*, 650 F. App'x 83, 85 (2d Cir. 2016) (affirming grant of Section 1782 discovery even though same discovery might not be obtainable under Hong Kong law). "Only where materials being sought are privileged or otherwise prohibited from being discovered or used is the third *Intel* factor implicated." *In re Tiberius*

10

*Group*, 2020 WL 1140784, at *4 (citing *In re Accent Delight Int'l Ltd.*, 791 F. App'x 247 (2d Cir. 2019)).

Neither Apollo nor Centerbridge has offered any basis to conclude that the discovery Petitioner seeks is privileged or prohibited from being discovered by Portuguese law or a specific court ruling in the Portuguese Litigation. Nor have they provided any proof that the Portuguese court would reject evidence obtained by Petitioner through its Section 1782 application in this Court. *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995). To the contrary, Portugal is a member of the Hague Evidence Convention, which provides for mutual assistance between and among the courts of the European Union and the United States. This suggests that the Portuguese court would be receptive to U.S. federal judicial assistance. *See In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004).

Moreover, Petitioner has explained through an affidavit submitted by Portuguese counsel that there is no rule or legal provision under Portuguese law that would prohibit or discourage Petitioner from obtaining the information sought from Apollo and Centerbridge in this Court. (ECF No. 29 ¶ 10.)

This Court discerns no basis for construing the Portuguese judge's ruling to prohibit the collection of the information requested from Apollo and Centerbridge. Rather, the Portuguese Court merely seems to have taken issue with the specificity of the requests. More importantly, the requests were made to Novo Banco and Calm Eagle, not to Apollo or Centerbridge. There has been no ruling whatsoever with regard to documents obtainable from Respondents in this

case. Additionally, in this case, Petitioner has addressed the time limitation concern articulated by the Portuguese Court by limiting the time period to one year.

As to the fourth *Intel* factor, Apollo and Centerbridge have reserved their right to object to the breadth and scope of the proposed subpoenas if the Court permits them to be issued. The Court has reviewed the requests as a preliminary matter and finds that they request relevant information based on the description of the Portuguese Litigation provided by the parties and based on the relevant topics identified by the Portuguese judge. *See* n.1. While Petitioner has included a date restriction on the information requested to the one-year period surrounding the sale of Calm Eagle, Petitioner also has described at least some of the topics broadly and, the Court not knowing the precise time period at issue, cannot at the present opine on whether it should be further narrowed. To be sure, the requests as described would appear to fall well within the broad scope of discovery permissible under the Federal Rules of Civil Procedure and are not seeking "any and all" documents concerning the topics.

In oral argument, Respondents urged this Court to consider the discovery burdens on third parties, who are not a party to the litigation. While the Court is mindful that Respondents are non-parties, Section 1782 expressly contemplates that non-parties will produce documents. The statute is not dissimilar to Federal Rule of Civil Procedure 45, which also permits discovery from non-parties to litigation and where Courts consider the burden on the non-party when evaluating objections to Rule 45 subpoenas. The requests here are not so intrusive or burdensome that they would run afoul of Rule 45 because, as discussed above, they are limited in time. Further, they request only 1-3 categories of documents from Respondents. Neither Respondent has indicated that the costs or time involved in responding would be overly

burdensome. *See generally*, *In re Application Pursuant to 28 U.S.C. Section 1782 for an Ord. Permitting Christen Sveaas to Take Discovery from Dominique Levy, L & M Galleries & other non-participants for use in Actions Pending in the Norway*, 249 F.R.D. 96, 108 (S.D.N.Y. 2008) (Court found that there is no suggestion that the cost of producing discovery would be expensive or burden on a request for a subpoena to be issued on third parties and granted Petitioner's request.). Thus, the proposed subpoenas are not overly intrusive or burdensome for purposes of the fourth *Intel* factor.

Notwithstanding the above, because both Apollo and Centerbridge have reserved the right to object to the scope of the requests as currently phrased, the Court directs the parties to meet and confer about the requests consistent with the requirements of the Federal Rules of Civil Procedure. To the extent the parties cannot resolve the dispute, they shall present the issues in a joint letter to the Court by March 1, 2022 in advance of a telephonic conference to be held on Thursday, March 24, 2022 at 12:00 p.m. If the parties can resolve the disputes without the aid of the Court, they shall submit a letter in advance of the conference so stating and requesting adjournment of the conference.

**CONCLUSION**

Accordingly, Petitioner is hereby authorized to issue the proposed subpoenas. Respondents shall have 14 days from their receipt of the subpoenas to object or otherwise respond to the requests therein. Further, when serving the subpoenas, Petitioner is directed to simultaneously serve a copy of this Order on the recipients/Respondents.

SO ORDERED.

Dated:   January 21, 2022
         New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge

14