**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In Re: Application of Pedro Pidwell for An Order :      No. 1:21-mc-00166-ALC-KHP
Seeking Discovery from CENTERBRIDGE   :
PARTNERS L.P., and APOLLO GLOBAL   :
MANAGEMENT, INC. f/k/a/ APOLLO   :      **STIPULATION AND ORDER**
GLOBAL MANAGEMENT, LCC Pursuant to 28 :    **CONCERNING PROTOCOL FOR**
U.S.C. §1782, In Aid of a Foreign Proceeding   :    **PRODUCTION OF DOCUMENTS**
  :      **AND ELECTRONICALLY STORED**
  :           **INFORMATION**
  :
  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Applicant Pedro Pidwell and Respondents Apollo Global Management, Inc. and Centerbridge Partners, L.P. HEREBY STIPULATE AND AGREE, by and through their undersigned counsel, that the Stipulation and Order Concerning Protocol for Production of Documents and Electronically Stored Information ("Discovery Plan") shall govern the production of documents, testimony, exhibits, electronically stored information ("ESI"), and any other materials or information (including any abstract, any copies, summaries, or derivations thereof) (collectively, "Documents") produced by the Producing Party (as defined below) during discovery in this Action[1] as of the execution date of this Discovery Plan.

## I. PARTIES' AGREED-TO TERMS

### A. DEFINITIONS

1. As used herein, this Discovery Plan shall refer to Applicant and Respondents collectively as the "Parties" and individually as a "Party."

2. As used herein, the Applicant requesting documents shall be referred to as the "Requesting Party" and the Respondent producing Documents in response to such requests shall be referred to as the "Producing Party."

### B. GENERAL TERMS

1. This Discovery Plan shall govern the production of Documents, as described in Federal Rules of Civil Procedure 26, 33, 34 and 45, and 28 U.S.C. §1782..

2. The provisions set forth herein shall govern the production of Documents only by the Producing Party.

3. Nothing in this Discovery Plan shall supersede the provisions of any stipulated Protective Order.

4. Nothing in this Discovery Plan is intended to be an exhaustive list of discovery obligations or rights of the Parties under the Federal Rules of Civil Procedure, the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Civil Local Rules"), and any other applicable state and federal statutes, orders and rules. To the extent additional obligations or rights not addressed in this Discovery Plan arise under the Federal Rules of Civil Procedure, the Civil Local Rules, or any other applicable state and federal statutes, orders and rules, they shall be controlling.

5. By agreeing to this Discovery Plan, the Producing Party does not admit that any Documents produced under its terms are relevant or admissible in this Action or the Portuguese Action.[2] Nothing in this Discovery Plan shall be construed to affect the authenticity or admissibility of any document or data. All objections to the

---

[1] This Action refers to In Re: Application Of Pedro Pidwell For An Order Seeking Discovery From Centerbridge L.P., and Apollo Global Management Inc, F/K/A/ Apollo Global Management, LLC Pursuant To 28 U.S.C. §1782, in Aid of a Foreign Proceeding (No. 1:21-mc-00166-ALC-KHP).

[2] The Portuguese Action refers to the civil action pending in the District Court of Lisbon—Central Instance (Case No. 7624/15.0T8LSB).

authenticity or admissibility of any document or data are preserved and may be asserted at any time.

6.     This Discovery Plan does not establish any agreement as to either the appropriate temporal or subject matter scope of discovery in the Action or the Portuguese Action. This Discovery Plan does not govern the appropriate scope of discovery under Rule 26(b)(1), custodian selection and search parameters, or impose any obligations beyond in the Federal Rules of Civil Procedure.

7.     All Parties reserve all rights under applicable law for matters relating to the production of Documents that are not specifically addressed in this Discovery Plan, including the right to object to production of any Documents.

8.     If there is any inconsistency between this Discovery Plan and the Protective Order in this Action, the terms of the Protective Order shall govern. Responsive documents in TIFF format will be stamped with the appropriate confidentiality designation in accordance with the Protective Order in this Action. Each document produced in native format will have its confidentiality designation reflected on the endorsement on the bottom left-hand corner of the corresponding TIFF image slipsheet.

9.     The Producing Party will take reasonable efforts to ensure that all Documents they produce are decrypted, although media on which the Producing Party produces Documents may be encrypted for security purposes provided that appropriate password information is provided to all Parties to which such media are produced. The Producing Party will make reasonable efforts to ensure that any productions made are free from malware and provided on encrypted media or transmitted via a secure file transfer system.

10.    Nothing in this Discovery Plan shall be interpreted to require the disclosure of any irrelevant information or relevant Documents that the Producing Party contends are protected from disclosure by the attorney-client privilege, work-product doctrine, or any other applicable privilege, protection, or immunity, nor shall this Discovery Plan require the production of Documents that are not discoverable under applicable law. The Producing Party and their attorneys do not intend by this Discovery Plan to waive their rights to any protection or privilege, including the attorney-client privilege, the work-product doctrine, and any other privilege or immunity that may be applicable. No production of any Documents that the Producing Party contends is attorney-client privileged or protected by the work-product doctrine shall constitute a waiver of that privilege or protection, and all procedures in any confidentiality and protective orders entered in this Action shall be followed with respect to such Documents. The Producing Party and their attorneys are not waiving, and specifically reserve, the right to object to any discovery request on any grounds.

11.    As necessary, prior to filing any motion with or seeking the intervention of the court, the Parties agree to meet and confer as to discovery of Documents, to exchange information regarding issues associated with any production of Documents, and to resolve any procedures or disputes that arise under this Discovery Plan. If a Party objects to any actions taken by another Party, the

objecting Party shall state the specific objection in a letter or e-mail to counsel for the opposing Party or Parties. Any practice or procedures set forth herein may be varied by written agreement of the Parties.

12.　All notices, requests, and demands to or upon any of the Parties under this Discovery Plan shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when (i) for delivery by mail or courier, when delivered, or three (3) business days after being deposited in the mail, postage prepaid, whichever is soonest; or (ii) for delivery by e-mail, when received.

13.　The Parties agree to be bound by the terms of this Discovery Plan as of the date counsel for all Parties execute this Discovery Plan.

## C.　SCOPE OF DISCOVERY & PRESERVATION

1.　The Receiving Party agrees that only unique, non-duplicative sources of relevant Documents need to be preserved by the Producing Party.

2.　Consistent with the Producing Party's obligations under the Federal Rules of Civil Procedure, the Parties will meet and confer regarding any issues involving preservation, such as, for example, relating to categories or sources of information that are not reasonably accessible or cannot reasonably be preserved because of undue burden or costs as well as categories or sources of responsive information subject to data privacy or protection laws, or relevance considering the proportionality factors in Federal Rule of Civil Procedure 26(b)(1).

## D.　PROCESSES & TECHNOLOGY

1.　The Parties agree that each Producing Party will take reasonable steps to identify, review, and produce relevant Documents. Nothing herein shall be construed to limit or alter Respondents' obligation to produce documents in accordance with the applicable Federal Rules of Civil Procedure. The Parties further agree that each Producing Party is best situated to evaluate and utilize the procedures, methodologies, and technologies appropriate to identify, review, and produce its own Documents. Nevertheless, the parties shall discuss and to the extent practicable, employ methodologies or protocols for the search and review of electronically stored information, as well as the disclosure of techniques to be used. (Some of the approaches that may be considered include: the use and exchange of keyword search lists, "hit reports," and/or responsiveness rates; concept search; machine learning, or other advanced analytical tools; limitations on the fields or file types to be searched; date restrictions; limitations on whether back-up, archival, legacy, or deleted electronically stored information will be searched; testing; sampling; etc.) The parties shall also discuss factors relating to the scope of production, including but not limited to: (i) number and names of custodians; (ii) date ranges for which potentially relevant data will be drawn; (iii) timing of productions (including phased discovery or rolling productions); (iv) prioritization of review; and (vi) electronically stored information in the custody or control of non-parties.

2.　While this Discovery Plan is intended to address the majority of Documents and data sources handled in this matter, there may be situations where the Parties come

into contact with more complex, non-traditional or legacy data sources, such as ESI from social media, ephemeral messaging systems, collaboration tools, mobile device apps, and modern cloud sources. In the event such data sources are relevant, the Parties agree to take reasonable efforts to appropriately address the complexities introduced by such ESI, including, when appropriate, to meet and confer regarding relevant production format.

**E.   PRODUCTION FORMAT**

    1.    See Exhibit A attached herein for the Parties' agreed-upon production format.

**F.   PHASING**

    1.    The Parties agree to phase the production of Documents responsive to the subpoenas served in this case in a reasonable manner, but such phasing shall not create an undue delay in the production of Documents.

    2.    The Parties agree the Producing Party will produce documents on a rolling basis, but such rolling production shall not create an undue delay in the production of the Documents.

**G.   PRIVILEGE LOGS**

    1.    Privilege logs shall be provided in PDF or Excel format. Consistent with Local Rule 26.2 of the United States District Court for the Southern District of New York, when asserting privilege on the same basis with respect to multiple documents, the producing party may log those documents by group or category. For each group or category, the log shall contain the following information: the date range of the documents included in the category; the Bates numbers of any redacted documents; the identity of all persons who sent, or authored documents contained within a category including identification of which, if any, of them are attorneys; the identity of all persons designated as addressees or copyees to documents contained within a category, including identification of which, if any of them, are attorneys; a general description of the category of communications; and the type or nature of the privilege asserted (i.e., attorney-client privilege; work product doctrine, etc.).

**H.   CROSS-BORDER DISCOVERY & DATA PRIVACY**

    1.    The parties agree to discuss the impact of any applicable data privacy and protection laws with respect to the ability of parties to collect and transfer relevant information.

**I.   DOCUMENTS PROTECTED FROM DISCOVERY**

    1.    The Protective Order governs the inadvertent disclosure of privileged information that provides the protections and processes under Federal Rule of Evidence 502 and Federal Rule of Civil Procedure 26(b)(5)(B).

**J.    OTHER**

1.    In scanning paper documents, distinct documents should not be merged into a single record and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized). In the case of an organized compilation of separate documents (*e.g.*, a binder containing several separate documents behind numbered tabs), the physical organizational box, divider, and any labels and the documents that follow should be scanned separately, but the relationship among the documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The Parties will make their best efforts to unitize the documents correctly.

2.    The Parties agree that the Producing Party will create and produce optical character recognition (OCR) or other upgrades of paper documents or non-text searchable electronic images.

3.    This Discovery Plan shall have no effect on any Producing Party's right to seek reimbursement for costs associated with collection, review, or production of Documents. Nothing herein shall be construed as an agreement that a Producing Party is entitled to a reimbursement of such costs.

4.    Nothing in this Discovery Plan is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Producing Party to object to a subpoena.

5.    Counsel executing this Discovery Plan warrant and represent that they are authorized to do so on behalf of themselves and their respective clients.

**II.    MODIFICATION**

1.    Nothing in this Discovery Plan waives the right of any Party to petition the Court for an Order modifying its terms upon good cause shown, provided, however, that counsel for such Party must first meet and confer with counsel for the opposing Parties, and the Parties shall use reasonable best efforts to negotiate an amendment of this Discovery Plan prior to seeking relief from the Court.

SO STIPULATED AND AGREED.

_____
Grant R. Mainland
Milbank LLP
55 Hudson Yards,
New York, NY, 10001
(p): (212) 530-5251
(e): gmainland@milbank.com
*Attorneys for Centerbridge Partners, L.P.*

_____
V. David Rivkin
Wuersch & Gering LLP
100 Wall Street, 10th Floor
New York, NY, 10005
(p): (212) 509-4716
(e): david.rivkin@wg-law.com
*Attorneys for Pedro Pidwell*

_____
Andrew J. Ehrlich
Robert N. Kravitz
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York, 10019-6064
(p): (212) 373-000
(e): aehrlich@paulweiss.com
(e): rkravitz@paulweiss.com
*Attorneys for Apollo Global Management, Inc.*

_____
Dated:

_____
Dated:

SO ORDERED:

_____
KATHARINE H. PARKER, U.S.M.J.

Dated:        New York, New York

May 31, 2022

7

## Exhibit A

### Document Production Format

I.    Overview

    A.    All documents shall be produced as Bates-stamped tagged image file format ("TIFF") images along with an image load/cross reference file, a data load file with fielded metadata, and document-level extracted text for electronically stored information ("ESI") or optical character recognition ("OCR") text for scanned hard copy documents and non-searchable ESI. Details regarding requirements, including files to be delivered in native format, are below.

II.    TIFF Image Requirements

    A.    All documents shall be produced as TIFF images in 300x300 dpi Group IV single-page monochrome format.

        1.    Where a document contains color and producing an image of the document as a TIFF would make the image illegible, the Producing Party will produce the Document as a JPEG file, or as a color image in TIFF or PDF format or in native format.

    B.    All such images shall be sequentially Bates-stamped using a consistent length with leading zeros in the number. The format of the Bates numbers shall not change across productions.

    C.    Images shall include the following content where present:

        1.    For word processing files (*e.g.,* Microsoft Word) – Comments and "track changes" (and similar in-line editing).

        2.    For spreadsheet files (*e.g.,* Microsoft Excel) – Hidden columns, rows, and sheets; comments; and "track changes" (and similar in-line editing).

        3.    For presentation files (*e.g.,* Microsoft PowerPoint) – Speaker notes and comments.

    D.    Reasonable care shall be taken not to degrade the legibility of documents during the imaging process. If legibility is found to have been degraded, the receiving party may make reasonable requests for re-production of these documents.

III.    Native Format Requirements

    A.    Spreadsheet files

        1.    Spreadsheet files (*e.g.,* Microsoft Excel) shall be provided in native format.

        2.    In lieu of a TIFF image version of each spreadsheet file, a Bates-stamped single-page TIFF placeholder file shall be produced along with the native format version of each file.

        3.    When redaction is necessary, a redacted TIFF image version shall be produced. The parties reserve the right to request access to the native format versions of such files.

B. Multimedia files

    1. Multimedia files (*e.g.,* audio or video files) shall be provided in native format.

    2. In lieu of a TIFF image version of each multimedia file, a Bates-stamped single-page TIFF placeholder file shall be produced along with the native format version of each file.

    3. The parties reserve the right to edit multimedia files using industry standard methods if redaction of such files is deemed necessary.

C. Other files

    1. In limited circumstances, it may be necessary to obtain or view the native format versions of files, including color documents/images and dynamic files, such as databases. The parties reserve the right to reasonably request access to the native format versions of such files and/or an image format that supports viewing color documents.

IV. Image Load/Cross Reference File Requirements

A. A single-page image load/cross-reference file shall be provided with each production.

B. The file should use the Concordance Image Viewer (.OPT) format, as in the sample below. Note, the volume label information ("MSC001" in the sample .opt file) is optional:

*Sample Concordance Image Viewer .opt file:*
MSC000001,MSC001,MSC\0000\00000001.TIF,Y,,,3
MSC000002,MSC001,MSC\0000\00000002.TIF,,,,
MSC000003,MSC001,MSC\0000\00000003.TIF,,,,
MSC000004,MSC001,MSC\0000\00000004.TIF,Y,,,2
MSC000005,MSC001,MSC\0000\00000005.TIF,,,,

V. Extracted Text/OCR Requirements

A. Extracted text and/or OCR text shall be provided for all documents as separate, document-level text files; extracted text and/or OCR text shall not be embedded in the .DAT file (as defined below).

B. Document-level text file names shall consist of the beginning Bates number information of the document.

C. If a document is provided in native format with a single-page placeholder TIFF image (*e.g.,* spreadsheet files), the text file shall contain the full extracted text of the native file.

D. OCR text shall be provided for all redacted documents in lieu of extracted text.

E. With respect to produced text files, the specifications herein address ANSI text-based productions. Unicode text-based productions shall be provided for productions containing non-English language documents.

9

VI.    Data Load File Requirements

    A.    A data load file shall be provided with each production.

    B.    The file shall be a Concordance-loadable data file (".DAT" file) and contain Bates-stamp and metadata information as detailed below.

    C.    The delimiters and qualifiers to be used in the .DAT file are:

        *Record delimiter:*   Windows newline/Hard return (ASCII 10 followed by ASCII 13)
        *Field delimiter:*   (ASCII 20)
        *Multi-value delimiter:*   Semicolon ; (ASCII 59)
        *Text qualifier:*   Small thorn þ (ASCII 254)

D.    With respect to .DAT files, the specifications herein address ANSI text-based productions. Unicode text-based productions shall be provided for productions containing non-English language documents.

E.    The .DAT file shall have a header line with the below listed field names and shall include the corresponding information per each applicable field:

| Field | Comments | Document Types |
|---|---|---|
| BegBates | Beginning Bates number. | All. |
| EndBates | Ending Bates number. | All. |
| BegRange | Bates number of first page of family range (*e.g.,* first page of an email). | All. |
| EndRange | Bates number of last page of family range (*e.g.,* last page of last attachment to an email). | All. |
| PageCount | Number of TIFF image pages in the produced document. | All. |
| FileExtension | File extension of the original document (*e.g.,* .msg, .docx, .jpg). | All. |
| FileSize | File size of the original document. Format: bytes. | All. |
| Title | Title of the original document. | Loose files and attachments. |
| Custodian | Custodian full name. Format: LASTNAME, FIRSTNAME. | All. |
| AllCustodian | Full name of all custodians for whom the document is being produced. Format: LASTNAME, FIRSTNAME; LASTNAME, FIRSTNAME. | All. |
| Author | Author of document from available metadata. | Loose files and attachments. |
| From | Email author. | Email only. |
| To | Email addressee(s). | Email only. |
| CC | Email addressee(s), carbon copy. | Email only. |
| BCC | Email addressee(s), blind carbon copy. | Email only. |
| Subject | Email subject. | Email only. |
| DateCreated | File creation date. Format: MM/DD/YYYY. | All. |
| TimeCreated | File creation time. Format: HH:MM:SS AM/PM | All. |

| Field | Comments | Document Types |
|---|---|---|
| DateModified | File modification date. Format: MM/DD/YYYY. | All. |
| TimeModified | File modification time. Format: HH:MM:SS AM/PM | All. |
| DateSent | Email sent date. Format: MM/DD/YYYY. | Email only. |
| TimeSent | Email sent time. HH:MM:SS AM/PM. | Email only. |
| DateReceived | Email received date. MM/DD/YYYY. | Email only. |
| TimeReceived | Email received time. HH:MM:SS AM/PM. | Email only. |
| DateAccessed | Date document was last accessed. | All. |
| TimeZone | The time zone in which files were standardized during processing (*e.g.*, GMT). | All. |
| MessageID | Globally unique identifier for a message which typically includes messageid and a domain name (*e.g.*, <0E6648D558F338179524D555@m1p.contoso.net) . | Email only. |
| FileName | Name of file as maintained in the ordinary course of business. | Loose files and attachments. |
| FilePath | Original path to the file or email message. | All. |
| AllFilePaths | For globally and within custodian de-duplicated productions. Folder paths to this document's duplicates and the original path. Each path will contain the associated custodian. | All. |
| MD5Hash | Unique file identifier. | All. |
| TextPath | The production deliverable path to the extracted text or OCR for the document, including the file name. | All. |
| NativePath | The production deliverable path to the native-format file for the document, including the file name (if a native-format file is provided). | Loose files and attachments. |

F.   The parties shall de-duplicate stand-alone documents or entire document families globally using MD5 or SHA-1 Hash value matching. Email attachments shall not be eliminated from the parent email. Hard copy documents shall not be eliminated as duplicates of responsive ESI.

G.   In globally de-duped, incremental productions, there will be instances when production of documents from additional custodians will include documents previously produced. A Custodian Append overlay load file using the load file format described above shall be provided with updated AllCustodian and AllFilePaths fields; BegBates and EndBates fields may be used as the unique identifiers.

VII.   Miscellaneous

A.   All document family relationships shall be produced together and children files should follow parent files in sequential Bates number order.

B.   Embedded documents shall be extracted from the parent document with family relationship intact.

C. Productions shall be provided using industry standard encryption software or hardware. Any electronic transmission of produced materials must be done via a secure file transfer system.

D. If particular documents warrant a different format (*e.g.*, production of color images instead of black and white), the parties shall cooperate to arrange for the mutually acceptable production of such documents.

E. The parties agree not to knowingly degrade the searchability of documents as part of the document production process. For example, extracted text should not be replaced by OCR text except where appropriate (*e.g.*, OCR for redacted documents).

F. Redacted documents may have certain metadata fields withheld from production. The parties shall cooperate to create a list of metadata fields which may be produced for these documents.

G. All documents shall be processed so as to normalize the time zone.